**BANK OF NOVA SCOTIA**

v.

**SAN MIGUEL.**

No. 4756.

United States Court of Appeals
First Circuit.

June 21, 1954.

Henry Harfield, New York City (J. Henri Brown, Brown, Newsom & Cordova, San Juan, Puerto Rico, and Sherman & Sterling & Wright, New York City, on brief), for appellant.

F. Ponsa Feliu, San Juan, Puerto Rico (Fernando Fornaris, Jr., and Luis Blanco Lugo, San Juan, Puerto Rico, on brief), for appellee.

Before MAGRUDER, Chief Judge, and MARIS and WOODBURY, Circuit Judges.

MARIS, Circuit Judge.

The plaintiff Bank of Nova Scotia, a Canadian corporation, appeals for the second time from a judgment entered in the United States District Court for the District of Puerto Rico on a jury verdict for the defendant Marcelino San Miguel, a resident of Puerto Rico, in an action brought to recover damages suffered as a result of the dishonor by the Chase National Bank of the City of New York of a draft drawn by the defendant in favor of the plaintiff. The transactions out of which this litigation arose are set forth in detail in the opinion of this court on the first appeal, 196 F.2d 950.

For the purposes of this appeal it is pertinent to recall that the defendant had obtained an order to sell and ship to Jacob J. Salama & Company of Tangier, Morocco, 2000 metric tons of Dominican sugar and the plaintiff through its Trujillo City branch had agreed to advance the money needed for the purchase of the sugar and the expenses involved to Compania Antillana de Importacion y Exportacion C. por A., a Dominican corporation. Salama, through the Banco Hispano Americano at Tangier, had established an irrevocable credit in favor of defendant with Chase in the amount of $345,000.00. A confirmed letter of credit, issued on July 31, 1947 by Chase authorized the defendant to draw sight drafts which would be honored if presented by October 20, 1947, accompanied by documents issued by designated officials certifying stipulated requirements with respect to the sugar purchased. The letter of credit was delivered by the defendant to plaintiff through its San Juan branch on August 5, 1947. The sugar was purchased with money advanced by the plaintiff and was shipped to Spanish Morocco early in October, 1947.

The defendant, who was in New York sometime during the period from September 20 to October 26, 1947 in connection with his business affairs, on September 26th wrote to plaintiff's Trujillo City branch requesting that it prepare the required commercial invoices and draft. On the 10th of October plaintiff's Trujillo City branch forwarded to defendant in New York a form of commercial invoice to be prepared by him and a draft in its favor on Chase as drawee in the amount of $341,713.00, to be signed by defendant and returned by air mail to Trujillo City. These documents were mailed from New York on October 13th. When received in Trujillo City, the plaintiff inserted the date "15 Oct. 1947" in the draft, discounted it and applied the proceeds against the advances made to Antillana, the interest on these advances and the exchange charge on the draft. The balance of

$29,602.75 was remitted by check to the defendant in New York on October 16th. The same day the draft and the accompanying documents were sent to plaintiff's New York branch for presentment to Chase. These were presented to Chase on the final day stipulated in the letter of credit, October 20, 1947. Chase refused to accept or pay on the ground that the documents did not comply with the requirements of the letter of credit and returned the draft to plaintiff at about 4:30 P.M. that day.

After telephone conversations in New York between the defendant, officers of Chase and officers of plaintiff's New York branch, the draft and accompanying documents were returned to Chase about 5:00 P.M. that day. The alleged discrepancies in the documents were mere technicalities but Chase was never authorized after the expiration of the letter of credit to accept the draft. It was returned by Chase to the plaintiff in New York on November 7, 1947, with a letter itemizing the differences between the documents submitted and the requirements of the letter of credit. On January 20, 1948 the draft was formally protested. Subsequently Salama accepted the sugar at $85,000.00 less than the agreed sale price.

On June 22, 1949 the plaintiff brought suit alleging two causes of action, the first for the recovery of the amounts advanced to Antillana at defendant's request, and the second for the recovery by plaintiff as payee of $341,713.00, the amount of the dishonored draft, from the defendant as drawer, plus interest, upon which claim the defendant was credited with the net proceeds received from Salama. The defendant filed an answer to both causes of action and a counterclaim. The case was tried to a jury which rendered a verdict for the defendant. On appeal by the plaintiff from the judgment entered in favor of the defendant this court found no merit in the one error alleged with respect to the first cause of action. Therefore the verdict for the defendant remained undisturbed.

As to the second cause of action, on appeal the plaintiff asserted as an error the trial judge's instruction that it was barred by the applicable statute of limitations if the endorsement and delivery of the letter of credit by the defendant to the plaintiff was found by the jury to be an assignment thereof and to constitute a provision of funds. The parties had treated the draft as a foreign bill issued and delivered in the Dominican Republic and had applied the law of that Republic. The construction put upon the applicable Articles of the Code of Commerce of the Dominican Republic by defendant's expert was that in the case of the refusal by the drawee to pay a Dominican bill of exchange payable in the United States, suit against the drawer must be brought within three months after protest if the drawer resides in the Dominican Republic and has provided funds for the payment of the bill as of the time of maturity. It seemed evident that the trial judge based his instruction upon the conclusion that the applicable statute of limitations required the plaintiff to sue upon the draft within three months after its date of maturity whether or not protest was waived, if the defendant had made provision of funds for the payment of the draft. However, the record did not disclose whether the defendant came within the terms of Article 166 of the Code which made the three-months limitation available to those residing within the Republic. It appeared, therefore, that the prescription of five years fixed by Article 189 should have been applied. Accordingly, the judgment was reversed and a new trial granted on the second cause of action.

When the case went back to the district court the second cause of action was retried to a jury. Prior to the trial, the court permitted the plaintiff to amend that cause of action so as to allege that the draft in controversy was a New York inland bill of exchange not requiring protest. At the trial, however, the trial judge ruled that the draft was a foreign

bill as to which protest was required. The trial judge also ruled that the three-months statute of limitations provided for by Article 166 [1] of the Code of Commerce of the Dominican Republic did not apply and he withdrew from the jury's consideration the question whether the defendant was a resident of the Dominican Republic within the meaning of that Article. He submitted to the jury the question whether the defendant waived protest of the draft or was estopped by his actions on October 20th from relying on the failure to protest; also whether there was a second presentment of the draft on October 20th followed by a final dishonor on November 7th; and finally whether the plaintiff was estopped from recovering by reason of having prepared the papers which accompanied the draft and which the Chase National Bank held to be insufficient.

The jury rendered a verdict for the defendant upon which judgment was entered and the present appeal by the plaintiff followed. Since the verdict went for the defendant, the question, much discussed in our previous opinion, as to the applicability of the three-months statute of limitations is not now before us. On this appeal the plaintiff's principal contentions are that the defendant is estopped, as a matter of law, to urge the absence of protest as a defense and that in any event the draft was governed by New York law under which it was an inland bill of exchange not requiring protest, and that the trial judge erred in refusing to so hold.

■ As we have said, the trial judge submitted to the jury the question whether the defendant was estopped from setting up the absence of protest by his conduct in directing the plaintiff to return the draft to Chase on October 20th after it had been dishonored, thereby preventing protest. The plaintiff urges that the trial judge should have ruled that such estoppel was established as a matter of law. We cannot agree. On the contrary the evidence was conflicting on this question. There was evidence to support a finding by the jury that it was an officer of Chase who requested the return of the draft, thinking that the objections to the accompanying documents were trivial and that he could secure approval for payment, and that the defendant's role was merely to pass this request on to the plaintiff's officer.

■ Nor can we agree with the plaintiff's contention that the draft was an inland bill of exchange, to be governed by New York law and, under that law, not requiring protest on dishonor. Under the conflict of laws rule of Puerto Rico the questions as to the execution, the interpretation and the validity of a negotiable instrument are to be determined by the law of the place where it is made. Royal Bank of Canada v. Balle, 1925, 33 P.R.R. 944. It has heretofore been assumed in the present case that the draft here in question was drawn in the Dominican Republic. Our previous opinion was based upon that premise, then undisputed. Upon the second trial, however, the plaintiff contended, as alleged in its amended complaint, that the draft was drawn in New York. The trial judge, nonetheless, ruled that it was a foreign bill drawn in the Dominican Republic. We are satisfied that this ruling was right. For, although the form of draft was signed by the defendant in New York and mailed by him from New York to the plaintiff's Trujillo City branch, it is clear that it was not complete or intended to be so when it was mailed. On the contrary two things remained to be done to give the draft vitality. The form of draft which was already date-lined Trujillo City, D. R., had to be dated and the documents specified by the letter of credit against which it was drawn had to be attached. Both of these final necessary acts were performed in Trujillo City on October 15th, two days after the signed draft form was mailed by the defendant from New York. We think that it was then, and not until then, that the draft was drawn and that

---

1. The text of Article 166 is set out in footnote 5 to our prior opinion, 196 F.2d 950, 956.

the place of drawing was, therefore, the Dominican Republic. This question of characterization is also one of Puerto Rican conflict of laws but we have not been referred to any decision of the Supreme Court of Puerto Rico contrary to our conclusion which we are satisfied reflects the law of that Commonwealth. It follows that the draft was a foreign bill governed by Dominican law, as the trial judge held.

The plaintiff again argues, as it did on the first appeal, that the letter of credit issued by Chase to the defendant did not amount to a provision of funds for the payment of the draft within the meaning of Article 170 [2] of the Dominican Code of Commerce which would bring into play the requirement that the draft be protested on dishonor in order to hold the drawer. The trial judge charged the jury that the letter of credit did constitute a provision of funds. We adhere to the view expressed in our opinion on the first appeal and conclude that the trial judge was right in so holding. We accordingly see no need to discuss the point further.

 Next the plaintiff urges that the trial judge erred in submitting to the jury the question whether there was a second presentment of the draft on October 20th. The contention is that the evidence of what happened on that date would not support a finding that there was a second presentment and that the jury was not sufficiently instructed as to the meaning of a presentment. We see no merit in these contentions. There was evidence from which the jury might have found that the return of the draft to Chase amounted to a second presentment. The instructions of the trial judge were in our opinion sufficient to enable the jury to pass upon the question.

 Finally it is argued that the trial judge erroneously allowed the jury to consider the question of the plaintiff's alleged negligence in preparing the documents accompanying the draft, an issue

decided in its favor on the first trial by the denial of the defendant's counterclaim. The trial judge, however, expressly instructed the jury that this issue was out of the case and was not to be considered by them. It is true that he did instruct them that they might determine whether if the plaintiff prepared the documents without being requested by the defendant to do so it was precluded from making its present claim against the defendant which arose as a result of their faulty preparation. While this issue was in some respects similar to the issue of negligence involved in the counterclaim we think it was legally distinct. The defendant was, therefore, entitled to assert it and the jury to pass upon it.

The judgment of the district court will be affirmed.

---

2.   Article 170 is set out in full text in footnote 5 to our former opinion, 196 F.2d 950, 957.